**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| PRAIRIE VENTURES, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO.: 1:16-CV-02966-MHC |
| MATTHEW D. LIOTTA, | ) | |
| VERN KENNEDY, and | ) | |
| GERARD GUNTHERT, | ) | |
| | ) | |
| Defendants. | ) | |

**SECOND AMENDED COMPLAINT**

Plaintiff Prairie Ventures, L.L.C., a Nebraska limited liability company ("Prairie Ventures"), pursuant to the Court's Order Granting Plaintiff's Motion for Leave to File Second Amended Complaint, entered December 20, 2016 [Doc. 33], states its Second Amended Complaint against Defendants Matthew D. Liotta, Vern Kennedy, and Gerard Gunthert (collectively the "Defendants"), under Sections 10(b) and 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), for common law fraud and negligent misrepresentation as follows:

## PRELIMINARY STATEMENT

1.

This is an action by Prairie Ventures for the recovery of losses that it has suffered as a result of violations of federal securities laws, fraud and negligent misrepresentations by PodPonics, Inc. ("PodPonics") and Defendants in connection with Prairie Ventures' purchase of shares in PodPonics a hydroponic produce farm. Based on false and deceptive material representations and misstatements, as well as omissions of material information by PodPonics and Defendants, Prairie Ventures was induced to invest in PodPonics. Defendants, as PodPonics' control persons, and possibly others, failed to comply with the requirements of the securities laws and concealed the shaky financial condition of the company, including a catastrophic crop failure which materially impacted the financial condition of the company and eventually led to the bankruptcy of PodPonics. Defendants also misrepresented the amount of investors and subsequently misused Prairie Ventures' funds, including wrongfully diverting the funds to one or more of Defendants. Prairie Ventures seeks recovery of its purchase price, damages, punitive damages, and the costs of this action, including reasonable attorneys' fees.

## PARTIES, JURISDICTION AND VENUE

2.

Prairie Ventures is a limited liability company organized and existing under the laws of the State of Nebraska, and maintains its principal office at 17117 Oak Drive, Suite A, Omaha, NE, 68130. The members of Prairie Ventures are all residents of the State of Nebraska.

3.

Defendant Matthew D. Liotta ("Defendant Liotta") is an individual resident of the State of Georgia, residing at 140 Barksdale Dr. NE, Atlanta, GA 30309, and is or was the President, Chief Executive Officer and a member of the Board of Directors of PodPonics. Defendant Liotta may be served with process at his residence or wherever he may be found.

4.

Defendant Vern Kennedy ("Defendant Kennedy") is an individual resident of the State of New York, residing at 1827 County Route 5, Canaan, NY 12029, and is or was a member of the Board of Directors of PodPonics. Defendant Kennedy may be served with process at his residence or wherever he may be found.

5.

Defendant Gerard Gunthert ("Defendant Gunthert") is an individual resident

of the State of Georgia, residing at 6230 River Chase Circle, Atlanta, GA 30328, and is or was a member of the Board of Directors of PodPonics and an officer of PodPonics. Defendant Gunthert may be served with process at his residence or wherever he may be found.

6.

Defendants are subject to the jurisdiction of this Court pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b). Defendants directly and indirectly engaged in interstate commerce by selling and marketing PodPonics' securities, including to residents of other states (including but not limited to Prairie Ventures) by use of the means and instrumentality of interstate commerce, the mails, and email in connection with the purchase or sale of securities.

7.

The Court also has jurisdiction over state law claims in this matter based on diversity under 28 U.S.C. §1332 as the Plaintiff and Defendants are residents of different states and the amount in controversy exceeds $75,000.

8.

This Court has personal jurisdiction over Defendants and venue is proper in the Northern District of Georgia because: (a) Defendants have engaged in significant business in this District; and (b) Defendants' wrongful conduct occurred in

significant part in this District.

## STATEMENT OF FACTS

### Background of Podponics and Defendants' Role at PodPonics

9.

PodPonics, Inc. is a Delaware corporation founded in 2010 which operated a hydroponic produce farm located in Atlanta, Georgia. PodPonics grew its produce in an entirely indoor facility, growing its produce in water, not soil, and utilizing LED lighting instead of sunlight.

10.

Each of the Defendants is a control person of PodPonics, as officers and/or directors of PodPonics, shareholders and a member of the senior management team.

11.

Defendant Liotta was the founder of Podponics and one of its largest shareholders. At all times relevant to this action Defendant Liotta was a controlling shareholder, the President and Chief Executive Officer, member of the Board of Directors and a member of the senior management team that operated PodPonics. Defendant Liotta remained an officer of PodPonics except for a few months' hiatus following his resignation on or about July 2, 2015, but even then he remained a member of the Board of Directors, the Chief Technology Officer and one of the

largest shareholders.

12.

By virtue of his multiple roles as the founder of PodPonics, the President and Chief Executive Officer, a major and controlling shareholder along with his family, a member of the Board of Directors, the Chief Technology Officer and a member of the senior management team, and an owner of FoodHub Atlanta, LLC ("FoodHub") (which provided financing for PodPonics), at all times relevant to this action, Defendant Liotta had the power to direct the actions and transactions of PodPonics. Defendant Liotta possessed the power to, and did in fact, control and direct the actions of PodPonics, particularly as related to disclosing information about PodPonics growing operations at its Level 1 Farm facility in Atlanta, Georgia and as related to raising funds for PodPonics. Prior to resigning as CEO on July 2, 2015, by virtue of his positions, Mr. Liotta controlled the day to day operations of PodPonics and the general affairs of the company including the content of statements made to Plaintiff Prairie Ventures concerning the growing operations of PodPonics and potential investment in PodPonics.

13.

Defendant Kennedy was the Executive Chairman of the Board of Directors of PodPonics and a shareholder. Defendant Kennedy assumed major responsibility for

raising the Series B round financing. By virtue of his roles, Defendant Kennedy had the power to direct the actions and transactions of PodPonics as related to investments in the Series B financing. Defendant Kennedy possessed the power to, and did in fact, control and direct the actions of PodPonics, specifically as related to disclosing information related to investing in the Series B financing.

14.

Defendant Gunthert had multiple roles with PodPonics as a member of the Board of Directors, an officer and member of the senior management team, the Vice President for Construction and Real Estate, and a shareholder. Additionally, Defendant Gunthert was and is an owner and manager of FoodHub which provided financing to PodPonics. By virtue of his roles, and particularly as a member of the senior management team, Defendant Gunthert had the power to direct the actions and transactions of PodPonics, specifically as related to disclosing information about PodPonics' growing operations at its Level 1 Farm facility in Atlanta, Georgia and as related to raising funds for PodPonics.

15.

As members of the Board of Directors, shareholders and executive officers, and members of the senior management team of PodPonics, Defendants had the right to and in fact did control the activities related to fundraising and obtaining

investment in PodPonics, and also maintained control of other PodPonics employees and representatives, including J. Connor Seabrook, who held the positions of Vice President of Finance and Administration, Treasurer and Secretary.

**PodPonics' Financial Difficulties Leads to the Need for Capital Investment**

16.

Since its inception in 2010, PodPonics had been marginally solvent and had a history of losing money.

17.

By the beginning of 2015, PodPonics' financial situation and need for more financing had become acute. Thus, the minutes of a PodPonics Board of Directors meeting of January 12, 2015, in which all the Defendants participated, refers to a review of the " illiquid position of the company" and the fact that its major source of financing, FoodHub, would not extend further financing "until additional capital could be raised."

18.

At a PodPonics Board of Directors meeting on January 16, 2015, in which all of the Defendants participated, Defendant Liotta again discussed the "illiquid position" of the company. At that January 16, 2015 Board meeting, Defendant Kennedy "expressed his willingness to become Executive Chairman of the Board

effective March 2, 2015" and the minutes reflect that "In this role, he will be focused on raising the Bridge and Series B Financing…" The Board took official action to elect Defendant Kennedy to that position and to assume that role effective March 2, 2015.

19.

As another example of the need for funds, at the February 6, 2015 PodPonics Board of Directors meeting, in which all the Defendants participated, there was a discussion of the PodPonics' "… cash situation, including the urgent need to raise additional capital." By February 24, 2015, PodPonics authorized and had its first closing of the Series B round of financing. At a subsequent PodPonics Board of Directors meeting of March 12, 2015, attended by all Defendants, "...it was agreed that Matt Liotta and Vern Kennedy would negotiate terms to engage Green Circle Capital Partners, LLC ("Green Circle") to help PodPonics raise the Series B financing."

20.

The Board of Directors meeting minutes referred to above and others were not prepared or approved and were not available to Prairie Ventures until after it made its investment in PodPonics.

21.

With regard to the Series B round of investment, the Board of Directors of PodPonics determined that "new investment will be accepted on a first come first served basis." Thus, if there was a surplus of investors for the Series B round, the investments would be accepted in the order in which investors actually provided their funds to the company.

22.

Due to his multiple roles with PodPonics, Defendant Liotta had a special incentive to raise money for the company at all costs. He was not only the founder, the Chief Executive Officer, and a Board member of PodPonics, but he and his family were the largest shareholders in PodPonics. Including his own personal funds, Defendant Liotta had obtained a substantial investment in PodPonics from his father, Mr. Dennis Liotta, who was the largest individual shareholder in PodPonics. Indeed the initial funds for PodPonics were contributed by Defendant Liotta and his father. In addition, Dennis Liotta's friends and colleagues had either invested or become involved in PodPonics. Thus, the failure of PodPonics would be a personal embarrassment to Defendant Liotta. To avoid this failure and embarrassment, Defendant Liotta was especially motivated and desperate to obtain further investment in PodPonics to allow the company to continue to operate.

**PodPonics' Solicitation of Investment from Prairie Ventures**

23.

Beginning in February of 2015, when PodPonics was marketing securities to Prairie Ventures, PodPonics and Defendants, directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of securities described herein, knowingly or negligently: (a) employed a device, scheme, and artifice to defraud; (b) made untrue statements of material facts and omitted material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, and courses of business which have operated as a fraud upon the purchase of such securities.

24.

PodPonics and Defendants, and possibly others, made untrue statements of material fact and failed to state material facts, and knew or should have known the materially misleading nature of the misrepresentations and omissions. In particular, Defendants failed to inform Prairie Ventures of a fungal infection event in the crops that ultimately caused a catastrophic failure of all PodPonics crops and caused PodPonics to cease its operations. Additionally, Defendants, by and through an authorized agent of PodPonics, informed Prairie Ventures that the stock offering was

oversubscribed when in fact the offering was vastly undersubscribed. These material omissions and affirmative misstatements were intentionally made for the purpose of marketing PodPonics' equity stock to Prairie Ventures.

25.

Thus, beginning in February of 2015, PodPonics solicited an investment from Prairie Ventures for what was known as the Series B round of capital to solicit a total $5 million of investment. In response to that solicitation, on March 6, 2015, Dr. Rodney Markin, a principal in Prairie Ventures, travelled to Atlanta to meet with Defendant Liotta and Connor Seabrook, who was represented to be the PodPonics' Vice President for Finance and Administration, to discuss a possible investment.

26.

The March 6, 2015 meeting in Atlanta included a tour of the PodPonics facilities, including the existing "Level 1 Farm" facility located in Atlanta. Defendant Liotta and Mr. Seabrook showed Dr. Markin the ongoing growing operations of the farm and explained the technology involved, the production process, and the sales and distribution of the lettuce grown at the Farm. During the tour, Defendant Liotta and Mr. Seabrook represented that the growing operation being observed consisted of normal and healthy crops which were harvested and sold to customers.

27.

In Podponics marketing materials, which PodPonics first provided to Prairie Ventures on February 14, 2015 and then again in a March 4, 2015 email from Connor Seabrook prior to Dr. Markin's tour of the Atlanta facility, in a group of slides entitled "Investment Summary", including photographs of apparently healthy crops (Exhibit "A" at page 4 entitled "Our Approach"), PodPonics likewise described a company that operated a hydroponic farm growing and harvesting lettuce which was then sold to customers.

28.

No mention was made during the tour of the Atlanta facility or in the marketing materials of any problems with the Level 1 Farm's operations, production, or sales. No mention was made of any fungal infection or disease that had been experienced with the crops or that there was any problem with the health of the Atlanta Level 1 Farm operations.

29.

Prairie Ventures engaged in substantial investigation as part of its due diligence in considering an investment in PodPonics. This due diligence included not only visiting Atlanta to meet with Defendant Liotta and touring the Level 1 facility, but also a thorough review of the information provided by PodPonics

concerning its operations and finances (including the marketing slides entitled "Investment Summary" describing PodPonics, the historical financials, and a pro forma), a review of the history of capital investment in PodPonics, an analysis of industry competition, questions concerning PodPonics intellectual property, the impact of technology on profit margins and plans for use of the funds being raised. (True and correct copies of the series of marketing slides describing PodPonic's supposedly healthy growing operation, the financials, and a pro forma, all of which were provided on March 4, 2015, are attached to this Second Amended Complaint as Exhibits "A", "B" and "C" respectively.)

30.

Prairie Ventures also made numerous inquiries to and had several communications with PodPonics officials and representatives. Among other things, Prairie Ventures inquired about the relationship between PodPonics and FoodHub, which is a company owned by PodPonics insiders. FoodHub owned a $2.5 million Senior Secured Note from a loan to PodPonics, and Prairie Ventures requested a copy of the Senior Secured Note. Prairie Ventures also repeatedly inquired about the intended uses of the $5 million in funds being raised in the Series B round.

31.

As part of its due diligence in considering whether to invest in PodPonics, Prairie Ventures specifically inquired about what other investors had committed to the Series B round and how much of the $5 million dollars of the Series B round had been raised. Prairie Ventures made it clear to PodPonics that Prairie Ventures' interest in investing in PodPonics was conditioned upon the full $5 million of the Series B round being raised. Thus, for example, in a March 27, 2015 email from Dr. Markin to Connor Seabrook, Dr. Markin stated that Prairie Ventures' consideration of an investment in PodPonics was conditioned upon "…the previously discussed terms of $4 M premoney valuation **and $5 Million capital raise."**

32.

In keeping with the action by the PodPonics Board of Directors, Mr. Connor Seabrook, PodPonics' Vice President of Finance and Administration, informed Prairie Ventures that investment in the Series B round would be accepted on a "first come first served" basis.

33.

The presence of other investors was important and material to Prairie Ventures' consideration of whether or not to invest in PodPonics as it was a material factor in assessing the viability of PodPonics as a company. If there were insufficient

investors to complete the full $5 million of the Series B round then Prairie Ventures would not want to invest as PodPonics would be less likely to succeed.

34.

Following its expression of interest in investing (and its inquiries as to other Series B round investors), PodPonics informed Prairie Ventures that a company known as Green Circle "has been retained by PodPonics to raise the balance of the series B round." Thus, PodPonics represented to Prairie Ventures that Green Circle, and its managing Principal, Mr. Stu Strumwasser, were agents of PodPonics authorized to act on behalf of PodPonics in dealing with Prairie Ventures in connection with its potential investment in PodPonics. Prairie Ventures was introduced to Mr. Strumwasser and told to work with him regarding a potential investment in PodPonics.

35.

Defendants were all aware of the role being played by Mr. Strumwasser and Green Circle and the fact that Prairie Ventures had been referred to Green Circle regarding an investment in PodPonics. For example, Defendant Kennedy was aware of the fact that Prairie Ventures had been referred to Green Circle to discuss an investment in PodPonics, and Mr. Kennedy thus reached out to Prairie Ventures in

an email dated April 1, 2015 to Dr. Markin concerning a potential investment in PodPonics.

36.

As the agent and representative of PodPonics, whose activities were controlled by Defendants, Mr. Strumwasser of Green Circle was specifically instructed by Defendants, including Defendant Liotta, that he should tell potential investors, including Prairie Ventures, that the Series B round had more investors than it could accommodate and that the investors whom the round could not accommodate might only be provided with a mix of Series B shares and a convertible note to the next round of fundraising. Defendant Kennedy expressed to Mr. Strumwasser doubt as to whether Prairie Ventures would even be allowed to invest in PodPonics, due to the purported surplus of investors for the Series B round. Based on these instructions from Defendants Liotta and Kennedy, between April 1, 2015 and April 30, 2015 Mr. Strumwasser told Dr. Markin that the Series B round was oversubscribed and that if Prairie Ventures did not act quickly it would not be able to invest. This same representation was made to Dr. Markin by Podponics' Vice President of Finance and Administration, Connor Seabrook. Mr. Seabrook informed Dr. Markin that due to the surplus of investors for the Series B round, if Prairie Ventures did not close on its investment promptly, it would miss the deal.

37.

As Mr. Strumwasser confirmed in a subsequent email message to Dr. Markin of January 30, 2016:

> The company told me that they had an order pending for the entire balance of the round, Matt [Liotta] literally instructed me to stop offering Series B stock to investors and instead explain that they would have to accept a combination of Series B and a convertible note to the next round, and we had a lengthy list of highly interested parties. As you know, unfortunately the situation changed, diligence didn't go well, and I am also not sure I was always given great information from the company.

38.

Based on these false representations and material omissions that PodPonics made to Prairie Ventures, by the end of April 2015 Prairie Ventures committed that it would invest $1 million in PodPonics as a part of the Series B round. Thus, in an email message dated April 30, 2015 from Mr. Strumwasser to Dr. Markin, Mr. Strumwasser congratulated Prairie Ventures "on your decision to invest in the Podponics Series B Preferred Stock Financing" and provided Prairie Ventures with a set of closing documents for its stock purchase. (A true and correct copy of this April 30, 2015 email from Mr. Strumwasser to Dr. Markin of Prairie Ventures is attached to this Second Amended Complaint as Exhibit "D".)

39.

On or about May 20, 2015, based on the false representations and material

omissions Defendants made to Prairie Ventures, Prairie Ventures entered into a Series B Preferred Stock Purchase Agreement (the "Stock Purchase Agreement") whereby it committed to purchase 14,814,814 Series B shares of PodPonics (the "Shares") in exchange for $1 million.

40.

Simultaneously with the Stock Purchase Agreement, on or about May 20, 2015, Prairie Ventures entered into an Escrow Agreement with Respect to Investment in PodPonics, Inc. (the "Escrow Agreement"), delivering $1 million to the escrow agent for the purchase of the Shares.

41.

Prior to Prairie Ventures entering into the Stock Purchase Agreement and Escrow Agreement, PodPonics and Defendants had knowledge of the catastrophic failure of all PodPonics' crops caused by a fungal infection, ultimately forcing PodPonics to cease its operations. Defendants thus knew that the Level 1 Farm was not a healthy growing operation as had been represented to Prairie Ventures and they had the power to inform Prairie Ventures of this fact. Despite this actual knowledge, and the fact that Prairie Ventures had not been informed, PodPonics and Defendants intentionally or through severe recklessness failed to inform Prairie Ventures of this catastrophic event.

42.

Prior to Prairie Ventures entering into the Stock Purchase Agreement and Escrow Agreement, PodPonics and Defendants informed Prairie Ventures that the Series B round stock offering was oversubscribed when in fact the offering was vastly undersubscribed. PodPonics and Defendants each had knowledge that the Series B round was undersubscribed, and had the power to inform Prairie Ventures of this fact, yet they intentionally or through severe recklessness failed to inform Prairie Ventures of this fact.

43.

Prior to Prairie Ventures furnishing its funds to PodPonics, PodPonics did not provide Prairie Ventures with a copy of any SEC filing indicating that less than the full $5 million of the Series B round had been raised, and prior to providing its funds to PodPonics, Prairie Ventures was not aware of any such filing.

44.

On or about May 29, 2015, based on the false representations and material omissions that PodPonics and Defendants made to Prairie Ventures, Prairie Ventures consented to the disbursement of the $1 million to PodPonics.

45.

Unbeknownst to Prairie Ventures, its investment in PodPonics of $1 million

was the **last investment** made in PodPonics during the initial series B round. Other than a subsequent investment by Dennis Liotta in a restructured Series B round in August 2015, PodPonics obtained no further investment in the initial Series B round, or otherwise. Thus, the Prairie Ventures investment was the "last in the door" for the initial Series B Round, and PodPonics and Defendants obtained this investment from Prairie Ventures only by misrepresentation and omission of material information.

46.

Prairie Ventures entered into the Stock Purchase Agreement and Escrow Agreement and released the escrowed funds without any knowledge of the catastrophic failure of crops or that the Series B round was not fully funded. Prairie Ventures was unable to learn this information, despite its reasonable and extensive due diligence.

47.

It is now clear that Defendants materially omitted information of the catastrophic failure of PodPonics' crops which materially impacted the financial condition of PodPonics and made materially false statements to Prairie Ventures concerning the amount of capital raised in the Series B round.

48.

Prairie Ventures, and its officers and managers, reasonably relied on the false

representations and material omissions made by PodPonics' officers and directors when they agreed to invest $1 million in PodPonics, and they would not have made that investment if Defendants had told the truth about the catastrophic failure of crops and the undersubscribed Series B stock offering. Prairie Ventures also paid an inflated price for the PodPonics stock as a result of PodPonics' and Defendants' failure to disclose the fungal infection which caused the catastrophic crop failure and misrepresentation regarding the Series B stock offering.

49.

PodPonics and Defendants subsequently misused Prairie Ventures' funds, including wrongfully diverting the funds to one or more of Defendants. The bulk of the Prairie Venture funds was used up within a very short time period, and within 90 days of Prairie Ventures' investment, PodPonics was insolvent. On information and belief, PodPonics and Defendants used the Prairie Ventures funds to pay their own salaries or benefits, to make interest payments to FoodHub (in which defendants Liotta and Gunthert have an ownership interest) or other debts of the company, rather than to fund future ongoing operations.

50.

As senior executive officers and directors of PodPonics, and members of the senior management team, as well as Defendant Liotta's status as a controlling

shareholder, each of the Defendants had both the power to control the general affairs of PodPonics and the specific fundamental power to require PodPonics to make honest representations about its growing operations and stock offering.

51.

As insiders, each of the Defendants benefitted from the Prairie Ventures investment in PodPonics and received personal gain by either paying themselves salary or benefits, paying interest to FoodHub and by using the Prairie Ventures money to try to salvage their own or their family and friends' investments in PodPonics.

**Prairie Ventures Learns of the Fraud by PodPonics and Defendants and Reserves Its Rights.**

52.

At the first meeting of the Board of Directors of PodPonics in which representatives of Prairie Ventures participated following Prairie Venture's May 2015 investment in PodPonics, which meeting was held on June 17, 2015, it was disclosed, and Prairie Ventures learned for the first time, that there had been a total crop failure due to disease at the Atlanta facility and that PodPonics had not obtained sufficient investment to fill the series B subscription. In connection with these disclosures, Defendant Vern Kennedy, then Chairman of the PodPonics Board, announced that PodPonics faced the prospect of bankruptcy at that time, due to the

status of the company, including the catastrophic crop failure and failure to obtain adequate investment in the Series B offering.

53.

As evidence of these disclosures at the June 17, 2015, PodPonics Board of Directors meeting, the written agenda for the Board meeting included:

“3. Farm Update-Level 1

a. Changes in management & procedures

**b. Getting L1 back to good health (KPls)**”

(A true and correct copy of the Agenda for the June 17, 2015 Board of Directors meeting is attached to this Second Amended Complaint as Exhibit “E”.)

54.

Likewise, a power point presentation for the June 17 Board meeting included among the priorities for the new CEO:

**1) Ensure that farm (L1) is healthy and sales back over $100k/mo by August.**

**…**

**3) Complete the Series B fund raise and ensure have enough capital to last until round C [fundraising].**

(A true and correct copy of the slides from this power point presentation for the June

17, 2015 Board of Directors meeting is attached to this Second Amended Complaint as Exhibit “F”.)

55.

Thus, there clearly had been a serious problem with the “health” of the Atlanta Farm that had a negative impact on sales *and* on the ability to raise funds. Prairie Ventures had never been told of any problems with the health of the Atlanta Farm, and PodPonics and Defendants had concealed this fact from Prairie Ventures. The fact that there were problems with the “health” of the Atlanta Farm was directly contrary to the representations made to Prairie Ventures by Defendant Liotta during the March 6, 2015 tour of the facility and in all materials concerning the Level 1 Farm operations that had been supplied to Prairie Ventures prior to the time of its investment.

56.

At the June 17, 2015 Board meeting, there was discussion that the fungal infection had shut down all production in the Farm in May of 2015. During the June 17, 2015 Board meeting, Mr. Strumwasser stated that other potential series B investors had backed out because of problems with the health of the crops, further evidencing the impact of the fungal infection that undermined the health of the Level 1 Farm in Atlanta. Unlike Prairie Ventures, these other investors apparently had

been informed of the problems with the "health" of the Level 1 Farm. Thus, the problems with the "health" of the farm that had been concealed from Prairie Ventures, not only had an effect on the loss of sales and a negative impact on relations with PodPonics retail customers, but it also discouraged investors.

57.

As subsequently noted by the then new PodPonics President Steven Wasik in an email dated July 7, 2015, in referring to another potential investor, "**Obviously issues like disease do not help the story,**…" Thus, the effects of the fungal infection lingered on and interfered with attempts by PodPonics to obtain other investors.

58.

Following the disclosures at the June 17, 2015 PodPonics Board meeting, Prairie Ventures immediately raised objections that it had been misled into investing in PodPonics and that the matters misrepresented and omitted were damaging to PodPonics. As a result, Prairie Ventures reserved its rights to pursue remedies or bring claims related to its investment, such as in the following Reservation of Rights clause that was included in an August 31, 2015 Board action restructuring the PodPonics Series B Preferred Stock:

> **RESERVATION OF RIGHTS**
>
> NOW, THEREFORE, BE IT RESOLVED, the Board hereby acknowledges that the consent or approval of the Restructured

> Financing Transaction by any holder of Series B Preferred Stock shall not or be deemed construed, and the implementation of the terms thereof, shall not constitute a waiver, release or discharge of any claims or causes of action to which any holder of Series B Preferred Stock of the Company may be entitled by reason of, arising from or related to the purchase of such shares of Series B Preferred Stock by any such stockholder from the Company (the Series B Acquisition"). The Board further acknowledges and agrees that each holder of Series B Preferred Stock of the Company expressly reserves all rights, remedies and recourse that he, she or it has, may have or may hereafter determine to have in connection with Prior Series B Acquisition and that their respective reservation of rights are binding upon the Company.

(A true and correct copy of this Board action restructuring the Series B Preferred Stock which contained this Reservation of Rights is attached to this Second Amended Complaint as Exhibit "G".)

**Series of Events Following June 17 and the Decision to Cease Operations at the Farm, Leading to PodPonics' Bankruptcy.**

59.

The catastrophic failure of crops, lack of investment as represented, and Defendants wrongful diversion of the funds to one or more of the Defendants all materially impacted the financial condition of the company and forced PodPonics to cease operations. Thus, by July 10, 2015, within 2 months of the investment by Prairie Ventures, the decision was made to shut down the Level 1 Farm in Atlanta and cease all efforts to grow any crops there due to the "financial position" of the PodPonics. Thus, the very matters that were the subject of misrepresentations and

omissions – the lack of funding and disease problem at the Farm – lead to the failure of PodPonics.

60.

In assessing the causes of the failure of PodPonics, in a message dated July 8, 2015 from the then President Steven Wasik, Mr. Wasik observed that the full $5 million of the Series B financing was needed to fund the company long enough for the next, Series C, round of investment. He also discussed that retail customers had lost faith in PodPonics due to the crop failure. Mr. Wasik also referred to Defendant Liotta as "extremely disruptive to a business" and "subversive." In addition, at least one Podponics Board member expressed the view that Defendant Liotta "…deals with people and situations in a dysfunctional and at times ethically questionable manner…" which "has hurt the company in the past…." In his own assessment in an email message to PodPonics Board members on July 17, 2015, Defendant Liotta recognized that due to the failure of the company, "Litigation is now in front of us" and that "The past will now be litigated;…."

61.

Subsequent attempts by PodPonics to obtain sufficient loans, investment or funding from FoodHub or other sources or for PodPonics to pursue a different business model were unsuccessful.

62.

On May 31, 2016, PodPonics filed a voluntary petition for Chapter 7 bankruptcy in the Bankruptcy Court for the Northern District of Georgia, Case No. 16-59291-MGD.

63.

Prairie Ventures was damaged because the Shares which it purchased in reliance on the false representations and material omissions are now (and were at the time they were purchased) worthless. The false representations and material omissions of Defendants were substantial and significant contributing causes to the damage to Prairie Ventures.

64.

Prior to filing this action, Plaintiff presented its claims to Defendants, and they had no response. Defendants did not deny or otherwise dispute the factual basis for Plaintiff's claims.

65.

All conditions precedent to the institution of this action have been performed, waived or excused.

66.

As a result of the foregoing, Prairie Ventures has retained counsel and agreed

to pay its counsel a reasonable fee for their services.

**COUNT ONE – VIOLATIONS OF THE EXCHANGE ACT**

67.

Prairie Ventures repeats and realleges each and every allegation set forth in paragraphs 1 through 66 as if fully set forth herein.

68.

This is an action for violations of the Exchange Act against Defendants.

69.

Through the conduct alleged above PodPonics violated Section 10(b) of the Exchange Act, and Rule 10b-5, 17 C.F.R. § 240.10b-5. Thus, PodPonics is primarily liable for a violation of the Exchange Act as the "controlled person".

70.

Defendants were, directly or indirectly, "control persons" of PodPonics for the purposes of Section 20 of the Exchange Act, 15 U.S.C. § 78t(a), in that they exercised and had actual control over PodPonics, its corporate policy and general affairs, including the content of the statements disseminated by PodPonics and omissions.

71.

PodPonics and Defendants violated Section 10(b) of the Exchange Act, and

Rule 10b-5, 17 C.F.R. § 240.10b-5.

72.

Defendants had the power to control the general affairs of PodPonics and had the specific power to control the specific corporate policy that resulted in the false representations and material omissions to Prairie Ventures and its officers and managers.

73.

As control persons of PodPonics, Defendants are jointly and severally liable for their violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, thereunder, pursuant to 15 U.S.C. § 78t(a) .

74.

Podponics and Defendants knowingly and materially omitted readily obtainable information of the catastrophic failure of PodPonics' crops caused by a fungal infection or were severely reckless in omitting this information. Furthermore, PodPonics and Defendants knowingly or through severe recklessness misrepresented that the stock offering was oversubscribed when in fact the offering was vastly undersubscribed, and subsequently misused Prairie Ventures' funds, including wrongfully diverting the funds to one or more of Defendants.

75.

Prairie Ventures and its officers and managers reasonably relied on the false representations and material omissions of Podponics and Defendants when they invested capital into PodPonics.

76.

As a direct and proximate result of the conduct alleged herein, Prairie Ventures has suffered damages in connection with Prairie Ventures' investments with PodPonics. The loss suffered by Prairie Ventures was caused by Defendants' misconduct.

77.

Prairie Ventures seeks judgment against Defendants for the total amount of its investment into PodPonics of $1 million, plus interest and attorneys' fees against all Defendants pursuant to Sections 10(b) and 20 of the Exchange Act, 15 U.S.C. § 78(b), 15 U.S.C. § 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, plus prejudgment and post-judgment interest.

**COUNT TWO: COMMON LAW FRAUD**

78.

Prairie Ventures repeats and realleges each and every allegation set forth in paragraphs 1 through 77 as if fully set forth herein.

79.

This is an action for common law fraud against Defendants.

80.

Defendants knew or should have known that they made material misrepresentations and omissions to Prairie Ventures in order to induce Prairie Ventures to invest $1 million into PodPonics.

81.

In reasonable reliance on the material misrepresentations and omissions set forth in this Complaint, Prairie Ventures invested $1 million for the purchase of the Shares.

82.

Defendants subsequently misused Prairie Ventures' funds, including wrongfully diverting the funds to one or more of Defendants.

83.

Prairie Ventures was damaged as a result of its reliance on the material misrepresentations and omissions of Defendants.

84.

Prairie Ventures seeks judgment against Defendants for the total amount of its investment into PodPonics of $1 million, plus prejudgment and post-judgment

interest.

**COUNT THREE – NEGLIGENT MISREPRESENTATION**
**(In the Alternative)**

85.

Prairie Ventures repeats and realleges each and every allegation set forth in paragraphs 1 through 84 as if fully set forth herein.

86.

Defendants owed a duty of care to Prairie Ventures to use reasonable care in making representation to it about the financial health and operations of PodPonics.

87.

In particular, each of the Defendants had a specific duty of care to take reasonable steps to prevent material misrepresentations and omissions to Prairie Ventures. More specifically, each of the Defendants had a duty to prevent an obvious and highly material omission about the catastrophic failure of PodPonics' crops caused by a fungal infection that occurred prior to Prairie Ventures investment into PodPonics. Each of the Defendants also had a duty to prevent the material misrepresentations of its authorized agent that the stock offering was oversubscribed when in fact the offering was vastly undersubscribed.

88.

Defendants subsequently misused Prairie Ventures' funds, including

wrongfully diverting the funds to one or more of Defendants.

89.

The damage that would result to Prairie Ventures from such misrepresentations and omissions was entirely foreseeable to each of the Defendants.

90.

Defendants violated their duty of care to Prairie Ventures when they failed to take reasonable steps to prevent the obvious and material misrepresentations and omissions. Each of the Defendants knew about the catastrophic failure of PodPonics crops and that the stock offering was undersubscribed, or could have easily deduced those facts based on only a cursory investigation.

91.

In reliance on the material misrepresentations and omissions, Prairie Ventures invested $1 million for the purchase of the Shares.

92.

Prairie Ventures was damaged as a result of its reliance on the negligent and material misrepresentations and omissions of Defendants.

93.

Prairie Ventures seeks judgment against Defendants for the total amount of its investment into PodPonics of $1 million, plus prejudgment and post-judgment

interest.

## JURY DEMAND

Prairie Ventures hereby demands trial by jury with respect to all issues so triable.

**WHEREFORE**, Prairie Ventures prays for the following relief:

A. That Defendants each be served with a Summons and the Complaint if service is not waived;

B. That Prairie Ventures be granted judgment against Defendants on each count of its Complaint for the total amount of its investment into PodPonics of $1 million, plus prejudgment and post-judgment interest;

C. That Prairie Ventures be awarded its reasonable attorneys' fees and costs incurred in bringing this action; and

D. For such other and further relief that this Court deems just, proper, and equitable under the circumstances.

This the 27th day of December, 2016.

[Signatures on Following Page]

BERMAN FINK VAN HORN P.C.

By: *_____/s/ Alan Lubel____*

Alan E. Lubel
Georgia Bar No. 460625
Benjamin I. Fink
Georgia Bar No. 261090
Daniel H. Park
Georgia Bar No. 930188

COUNSEL FOR PLAINTIFF
PRAIRIE VENTURES, L.L.C.

3475 Piedmont Road, NE
Suite 1100
Atlanta, Georgia 30305
(404) 261-7711
(404) 233-1943 (Facsimile)

**CERTIFICATION OF COMPLIANCE WITH
LOCAL RULE 7.1D AND 5.1B**

Pursuant to Local Rule 7.1D and 5.1B, the undersigned counsel hereby certifies that the foregoing document complies with the Local Rule's requirements as to font in that it has been prepared in Times New Roman, 14 point.

BERMAN FINK VAN HORN P.C.

By: *_____/s/ Alan Lubel_____*
Alan E. Lubel
Georgia Bar No. 460625

COUNSEL FOR PLAINTIFF
PRAIRIE VENTURES, L.L.C.

3475 Piedmont Road, NE
Suite 1100
Atlanta, Georgia 30305
(404) 261-7711
(404) 233-1943 (Facsimile)

# CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the foregoing **SECOND AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

John O'Shea Sullivan
Burr & Forman LLP
171 Seventeenth Street, NW, Suite 1100
Atlanta, GA 30363

Scott Bonder
Fried & Bonder LLC
1170 Howell Mill Rd., NW, Suite 305
Atlanta, GA 30318

This the 27th day of December, 2016.

By: *<u>/s/ Alan Lubel</u>*
Alan E. Lubel
Georgia Bar No. 460625

3475 Piedmont Road, NE
Suite 1100
Atlanta, Georgia 30305
(404) 261-7711
(404) 233-1943 (Facsimile)

COUNSEL FOR PLAINTIFF
PRAIRIE VENTURES, L.L.C.